TH:DR/DJM
F. #2025R00508

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA

- against -

ELIJAH ROY,
also known as "Eli Spice" and "Swervo," and

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - -

**TO BE FILED UNDER SEAL**

25-MJ-262

COMPLAINT AND AFFIDAVIT IN SUPPORT OF ARREST WARRANT

(18 U.S.C. §§ 922(g)(1), 924(a)(8), 1959(a)(3), 2 and 3551 et seq.)

EASTERN DISTRICT OF NEW YORK, SS:

Ryan Damora, being duly sworn, deposes and states that he is a Task Force Officer with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

On or about August 17, 2025, within the Eastern District of New York and elsewhere, the defendants ELIJAH ROY, also known as "Eli Spice" and "Swervo," and together with others, for the purpose of gaining entrance to and maintaining and increasing position in the 5-9 Brims, an enterprise engaged in racketeering activity, did knowingly and intentionally assault members of a rival gang, to wit, the Folk Nation Gangster Disciples, including Jamel Childs, with a dangerous

weapon and resulting in serious bodily to Jamel Childs, in violation of New York Penal Law Sections 120.05(2), 120.10(1), 120.10(3), and 20.00.

(Title 18, United States Code, Sections 1959(a)(3) and 2)

On or about August 17, 2025 within the Eastern District of New York and elsewhere, the defendant ELIJAH ROY, knowing that he had previously been convicted in a court of one or more crimes punishable by imprisonment for a term exceeding one year, did knowingly and intentionally possess in and affecting interstate and foreign commerce ammunition, to wit: ammunition collected by the New York City Police Department's Crime Scene Unit from Taste of the City Lounge in Brooklyn, New York on or about August 17, 2025.

(Title 18, United States Code, Sections 922(g)(1), 924(a)(8) and 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:[1]

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

1. I am a Task Force Officer with the Federal Bureau of Investigation ("FBI") and have been so employed since May 2020. I am currently assigned to Squad C-13 in the FBI New York Field Office, Brooklyn/Queens Resident Agency, which investigates violent gang criminal enterprises. As an FBI Task Force Officer, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have participated in numerous investigations of violent criminals and criminal enterprises and have used a variety of investigative techniques, including, but not limited to, interviews of witnesses, cooperating witnesses and confidential informants; physical surveillance; reviews of telephone records; search warrants as to physical premises; search warrants as to electronic devices and social media accounts; and search warrants as to location information.

2. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file, including the defendants' criminal history records; and from reports of other law enforcement officers involved in the investigation.

3. As described below, there is probable cause to believe that on August 17, 2025, in Brooklyn, New York, the defendants ELIJAH ROY and [redacted], along with other members and associates of the 5-9 Brims, shot at members of the rival gang Folk Nation Gangster Disciples ("GD"), including Jamel Childs, in order to maintain or increase their position in the 5-9 Brims. As a result of the shooting, in which members of the 5-9 Brims and GD shot at each other, Childs and two other individuals were murdered. An additional ten individuals were shot and injured.

4. In addition, as set forth below, there is also probable cause to believe that on the same date, the defendants ELIJAH ROY [redacted] who had been previously convicted of felonies, illegally possessed ammunition.

5-9 Brims Conflict with the Folk Nation Gangster Disciples

5. The FBI has been conducting an investigation of the 5-9 Brims, which is a set of the Bloods street gang, and the Folk Nation Gangster Disciples or "GD."

6. The 5-9 Brims, including its leaders, members and associates, constituted an "enterprise," as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

7. The 5-9 Brims, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving murder chargeable under New York Penal Law; offenses involving drug trafficking in violation of Title 21, United States Code, Sections 841 and 846; and acts indictable under Title 18, United States Code, Section 1951 (relating to interference with commerce, robbery or extortion).

8. The means and methods by which members of the 5-9 Brims and their associates conducted and participated in the affairs of the enterprise included: (1) drug trafficking, robbery and fraud as a means of obtaining money; (2) acts of violence, including acts involving murder and assault to enhance the enterprise's prestige and protect and expand the

enterprise's criminal operations; and (3) the use and threatened use of physical violence against various individuals, including members of rival criminal organizations.

9. Based on my participation in this investigation, information provided by cooperating witnesses and confidential informants, as well as speaking with other law enforcement agents, among other sources of evidence, I am aware that the 5-9 Brims and GD have been in conflict since at least 2016 and members and associates of the 5-9 Brims and GD have participated in retaliatory violence, including shootings, against each other.

10. In 2022, a cooperating witness who was formerly a member of GD ("CW-1") testified at a trial of four GD members and associates.[2] See United States v. Agoro et al., No. 20-CR-293 (E.D.N.Y.) (WFK). Specifically, CW-1 testified that he was a member of GD, which is a gang that operates in and around Brooklyn, New York and elsewhere. CW-1 testified, among other things, that members and associates of GD have committed acts of violence, such as shootings and other acts involving murder and assault, trafficking in counterfeit currency, drug trafficking and fraud. CW-1 also testified that participation in criminal activity by a member of GD, especially violence directed at rival gang members, increases the respect accorded to the member and could result in promotion to a leadership position.

[2] CW-1 testified pursuant to a cooperation agreement with the government and in hopes of receiving leniency at sentencing. CW-1 pleaded guilty to, among other crimes, racketeering, including predicate acts of counterfeiting, conspiracy to murder rival gang members, attempted murder and drug trafficking, in connection with his membership in GD and possession of a firearm in connection with a crime of violence. CW-1 was sentenced to time served, which was approximately 56 months. CW-1's information has proven reliable and been corroborated by, among other things, cell phone and social media evidence, including evidence admitted at the trial. CW-1 previously has been convicted of robbery in the second degree, attempted robbery in the second degree, possession of a forged instrument in the first degree, conspiracy with intent to commit murder and attempted criminal possession of a weapon in the second degree.

11. In 2023, a cooperating witness who was formerly a member of the 5-9 Brims ("CW-2") testified at a trial of a 5-9 member.[3] See United States v. Pippins, No. 19-CR-378 (E.D.N.Y.) (PKC). During trial, CW-2 testified that he was a former member of the 5-9 Brims, and that members and associates of the 5-9 Brims have committed acts of violence, such as shootings and other acts involving murder and assault, drug trafficking, robberies and fraud, among other crimes, on behalf of and in relation to the 5-9 Brims enterprise. CW-2 also testified, in sum and substance, that participation in criminal activity by a member, especially violence directed at rival gang members, increases the respect accorded to the member and is expected within the gang. Finally, CW-2 testified at trial about the 5-9 Brims' enemies or rivals, which included GD.

12. Based on my participation in this investigation, including my review of social media accounts belonging to multiple members and associates of the 5-9 Brims and GD and information provided by cooperating witnesses, among other sources of evidence, I am aware that the defendants ELIJAH ROY, also known as "Eli Spice" and "Swervo," and [redacted] were members and associates of the 5-9 Brims. [redacted]

---

[3] CW-2 testified pursuant to a cooperation agreement with the government and in hopes of receiving leniency at sentencing. While he was proffering with the government in the hopes of receiving a cooperation agreement, CW-2 indicated his concern to family members that he did not have sufficient information to provide substantial assistance to the government. CW-2 pleaded guilty to, among other crimes, charges of racketeering, including predicate acts of attempted murder, Hobbs Act Robbery, attempted robbery, and conspiracy to distribute cocaine and cocaine base, and possession of a firearm in connection with a crime of violence. CW-2 was sentenced to 72 months. CW-2 previously has been convicted of criminal possession of a weapon in the third degree, criminal mischief in the third degree, resisting arrest and attempted robbery in the first degree, among other crimes. CW-2's information has proven reliable and been corroborated by, among other things, cell phone and social media evidence, including evidence and witness testimony admitted at trial.

The August 17, 2025 Shooting at Taste of the City Lounge

13. On August 17, 2025, at approximately 3:30 a.m., NYPD officers responded to multiple 911 calls reporting a shooting at Taste of the City lounge, located at 903 Franklin Avenue in Brooklyn, New York (the "Lounge"). NYPD's Crime Scene Unit ("CSU") ultimately recovered approximately 43 shell casings, reflecting that at least 43 rounds of ammunition were fired during the course of the shooting. In addition, a ballistics examination determined that five separate semi-automatic firearms were used in the shooting.

14. The identifications of [redacted] and ROY are based on (1) my review of surveillance footage August 17, 2025, from multiple locations, including inside and outside of the Lounge, which depict their facial features, tattoos, as applicable, and clothing; (2) conversations with other law enforcement officers, cooperating witnesses and civilian

witnesses; (3) my review of booking photographs and other publicly available photographs for [redacted] and ROY; (4) my review of phone location data associated with phone numbers associated with [redacted] and ROY and (5) my review of address and phone information associated with [redacted] and ROY, among other things.



c. For example, below is a still-image of ROY from surveillance footage from August 17, 2025, as compared to a booking photograph of ROY maintained in an NYPD database:

15. Based on my review of surveillance footage from the Lounge, which includes cameras both outside and at multiple angles inside the Lounge, the following events transpired on August 17, 2025:

a. At approximately 1:30 a.m., [REDACTED] [REDACTED] was outside the Lounge with three other individuals I know to be members and associates of GD. By approximately 2:15 a.m., [REDACTED] Jamel Childs, and other GD members and associates were inside the Lounge.

b. At approximately 2:30 a.m., Marvin St. Louis, an associate of the 5-9 Brims who was killed in the course of the shooting on August 17, 2025, was outside of the Lounge with other individuals I recognize to be members and associates of the 5-9 Brims. At approximately 2:31 a.m., ROY and [REDACTED] joined St. Louis and the group of 5-9 Brims associates outside of the Lounge.

c. At approximately 2:33 a.m., ROY and [REDACTED] along with St. Louis and others, entered the Lounge and made their way to the back left-hand corner of the bar.

d. At approximately 3:15 a.m., St. Louis made a small-b hand sign, which, based on my training and experience and participation in this investigation, signified his association with the 5-9 Brims, and then made a GD hand sign, which, based on my training and experience and participation in this investigation, is a derogatory gesture to GD when used by a rival gang member.

e. At approximately 3:15 a.m., Childs, who appeared to have a firearm in his pocket, approached St. Louis in the back of the bar. St. Louis and Childs appeared to have a discussion before Childs returned to the middle of the bar and the group of GD associates. At approximately 3:22 a.m., St. Louis, [REDACTED] ROY and others stood together at the back of the bar, appearing to be in the middle of a discussion. ROY, [REDACTED] and St. Louis then walked back towards the bar toward the entrance of the Lounge. St. Louis bolted through the crowd

towards Childs and the other GD associates. St. Louis then began to fire towards Childs and Childs returned fire.

f. [REDACTED] who was standing near Childs, then began shooting towards St. Louis. [REDACTED] and ROY, who were standing closer to the bar's exit, shot back towards where Childs and the group of GD associates were standing. At approximately 3:23 a.m., [REDACTED] followed by ROY, stumbled out of the front door of the Lounge holding firearms.

g. At approximately 3:23 a.m., St. Louis exited the bar with a firearm in his right hand.

16. As noted above and based on my review of surveillance footage inside and outside of the Lounge, there were five shooters in the August 17, 2025 shooting between members of GD and members of the 5-9 Brims: ROY, [REDACTED] St. Louis and Childs. St. Louis and Childs were both shot and killed as a result of the shooting. An additional ten individuals were shot and injured.

17. Based on my discussions with an interstate nexus expert from the Bureau of Alcohol, Tobacco, Firearms and Explosives, I am aware that each type of ammunition that was collected by CSU from the Lounge on or about August 17, 2025 was manufactured outside the State of New York.

Criminal Histories

[redacted]

19. I have also reviewed the defendant ELIJAH ROY's criminal history records and have determined that, on or about July 15, 2019, in Kings County Supreme Court, ROY was convicted of criminal possession of a loaded firearm in the second degree, in violation of New York Penal Law Section 265.03, a felony punishable by a term of imprisonment of more than one year. ROY was sentenced to 3 years' imprisonment.

WHEREFORE, your deponent respectfully requests that the defendants [redacted] ELIJAH ROY, also known as "Eli Spice" and "Swervo," and [redacted] be dealt with according to law.

Ryan Damora
Task Force Officer
Federal Bureau of Investigation

Sworn to before me by telephone this
8th day of September, 2025

Clay H. Kaminsky
THE HONORABLE CLAY H. KAMINSKY
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK